297 Ga. 94
FINAL COPY

S15A0362, S15A0641. McHUGH FULLER LAW GROUP, PLLC v. PRUITTHEALTH-TOCCOA, LLC (two cases).

HUNSTEIN, Justice.

In these appeals, Appellant McHugh Fuller Law Group, PLLC ("McHugh Fuller") challenges both the award of a permanent injunction to Appellee PruittHealth-Toccoa, LLC ("PruittHealth") and a subsequent trial court order excluding certain filings from the appellate record in the original appeal. We conclude that the trial court did err, both in granting a permanent injunction following only an interlocutory hearing and in its exclusion of filings from the appellate record. Accordingly, we vacate the award of the permanent injunction, reverse the order designating the appellate record, and remand for further proceedings.

On April 17, 2014, McHugh Fuller, a Mississippi-based law firm, ran a full-page advertisement in a Northeast Georgia local newspaper, *The Toccoa Record*, noting that Heritage Healthcare of Toccoa, a Stephens County nursing home owned by PruittHealth, had been cited by the government for deficiencies

in the care of its residents and inviting those suspecting abuse or neglect of a loved one at the facility to call the law firm. On the following day, PruittHealth filed a verified complaint for temporary and permanent injunctive relief under the Georgia Uniform Deceptive Trade Practices Act (UDTPA), OCGA § 10-1-373 (a),[1] and petitioned ex parte for a temporary restraining order. That same day, the Stephens County Superior Court entered a temporary restraining order enjoining McHugh Fuller from publishing, in any newspaper or other media, advertisements regarding PruittHealth utilizing the language of the April 17 ad. The order also scheduled a hearing a few weeks thereafter to "determine whether injunctive relief should continue."

At the hearing, held on May 13, 2014, PruittHealth presented testimony that the government citation referenced in the ad arose from a 2012 survey report; that the cited deficiencies had been resolved immediately; and that a more recent survey report had found no such deficiencies. The facility's administrator also testified that the ad had caused severe damage to the facility's reputation, noting that the number of new admissions to the nursing home had

---

[1]Under this Code section, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."

been cut approximately in half since the ad ran. For its part, McHugh Fuller presented testimony to substantiate and justify the specific language used in the ad. The firm also presented expert testimony from an Emory University School of Law ethics professor, who opined that the ad was not false or deceptive.

At the conclusion of the hearing, the trial court stated that it found the ad to be deceptive and thus in violation of the UDTPA. The court stated: "I will grant the relief and I do find that the factors requiring injunctive relief have been met and satisfied." The court further held that "anywhere this ad is placed, whether it'd be on the Internet or in the . . . local paper, is in violation of the [UDTPA]." After directing PruittHealth's counsel to draft an order effectuating its ruling, the court asked whether the parties had any other matters to discuss, and counsel for both parties responded in the negative, after which the hearing was adjourned. Thereafter, the trial court signed an order enjoining McHugh Fuller "from publishing or causing the offending advertisement to be published in the future" and requiring that McHugh Fuller within 20 days "remove or cause to be removed at its expense all electronic postings of the advertisement."

McHugh Fuller thereafter filed a verified answer and a motion to amend and/or for reconsideration of the court's order. In its motion, McHugh Fuller

3

contended, inter alia, that the order was erroneous to the extent it purported to constitute a final order granting permanent injunctive relief, because McHugh Fuller was not on notice at the time that the court was considering anything other than interlocutory relief. The trial court, however, never ruled on these motions, and McHugh Fuller thus subsequently filed a notice of appeal.

In its notice of appeal, McHugh Fuller requested that the clerk "omit nothing from the record." PruittHealth then submitted its own designation of the record, in which it requested the court include only those items submitted to the court through and including June 2, 2014, the date the injunction was entered, thereby excluding the verified answer, motions, and supporting exhibits McHugh Fuller had filed with the trial court after that date. Following a hearing pursuant to OCGA § 5-6-41 (f),[2] the trial court held that the appellate record would not include materials submitted after June 2 because such items were not "before the Court for consideration at the time of the trial . . . or submitted prior to the entry of the final Order." McHugh Fuller filed a second notice of appeal

---

[2]Under this Code section, "[w]here any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth."

4

as to this ruling. This Court thereafter consolidated both appeals.

*Case No. S15A0362*

1. The trial court erred by granting permanent injunctive relief at the conclusion of the interlocutory hearing without giving McHugh Fuller clear notice at the time that it was doing so. Under the Civil Practice Act ("CPA"), once an ex parte temporary restraining order has been issued, the trial court then must schedule an interlocutory hearing "at the earliest possible time," OCGA § 9-11-65 (b), which is "to be followed by a trial on the merits." Smith v. Guest Pond Club, Inc., 277 Ga. 143, 144 (1) (586 SE2d 623) (2003) (citing OCGA § 9-11-65). Accordingly, "[t]he general rule is that entering permanent relief after an interlocutory hearing is improper." Georgia Kraft Co. v. Rhodes, 257 Ga. 469, 471 (1) (360 SE2d 595) (1987).

Under certain circumstances, the CPA does permit a trial court, either "[b]efore or after the commencement of" the interlocutory hearing, to "order the trial of the action on the merits to be advanced and consolidated with the [interlocutory] hearing." OCGA § 9-11-65 (a) (2); see also Georgia Kraft Co., 257 Ga. at 471. However, the court's authority to so consolidate is "'tempered by the due process principle that fair notice and an opportunity to be heard must

5

be given the litigants before the disposition of a case on the merits.' [Cits.]" Regency Club v. Stuckey, 253 Ga. 583, 586 (3) (324 SE2d 166) (1984). See, e.g., Wang v. Liu, 292 Ga. 568 (2) (740 SE2d 136) (2013) (vacating award of permanent injunction entered after interlocutory hearing due to lack of notice that permanent relief would be considered); Smith, 277 Ga. at 144-145 (vacating award of permanent injunction entered after initial hearing due to lack of notice such relief would be considered); Mosley v. H.P.S.C., Inc., 267 Ga. 351 (2) (477 SE2d 837) (1996) (vacating denial of permanent injunction at interlocutory hearing where neither parties nor court mentioned consolidation).

Here, while McHugh Fuller clearly had notice of the interlocutory hearing, it had no notice that the trial court intended at that hearing to consider the merits of permanent injunctive relief. The court's scheduling order made no reference to a final hearing on the merits. See Smith, 277 Ga. at 144-145 (where scheduling order issued following grant of TRO failed to specify that hearing would address merits of permanent injunction, appellant did not receive fair notice, and entry of permanent injunction was erroneous). In its briefing and argument to the trial court, McHugh Fuller cited the standard for interlocutory relief, indicating its belief that such relief was the sole issue under consideration.

Moreover, at no time during the May 13 hearing did the trial court expressly state that it intended to make a final ruling on the merits of a permanent injunction; rather, it referred merely to "injunctive relief" without specifying whether it was intended as temporary or permanent. See Mosley, 267 Ga. at 352 (final ruling improper where "neither the parties nor the trial court agreed upon, or even mentioned, consolidation"). In further indication of the lack of due notice of consolidation, McHugh Fuller's counsel objected to PruittHealth's proposed order on the basis that it referred to final rather than interlocutory relief, which, McHugh Fuller contended, had not been before the court for consideration at the May 13 hearing.

PruittHealth nonetheless contends that McHugh Fuller acquiesced in the entry of permanent injunctive relief by failing to object when the trial court pronounced its ruling at the conclusion of the May 13 hearing. We have held that "'when there is notice of an interlocutory hearing, the court may determine the issues on their merits after the interlocutory hearing where there is no objection or where the parties have acquiesced.'" Gwinnett County v. Vaccaro, 259 Ga. 61, 62 (1) (376 SE2d 680) (1989); see also Dortch v. Atlanta Journal, 261 Ga. 350 (1) (405 SE2d 43) (1991) (no error in rendering final ruling on the

7

merits following interlocutory hearing where trial court expressly confirmed it was doing so and parties did not object); Georgia Kraft Co., 257 Ga. at 471 (no error in rendering final ruling on the merits following interlocutory hearing where trial court informed parties during the hearing that it might do so); Wilkerson v. Chattahoochee Parks, Inc., 244 Ga. 472 (2) (260 SE2d 867) (1979) (no error in rendering final ruling on the merits following interlocutory hearing where appellants did not object thereto). However, a party cannot effectively acquiesce to a course of action, or be held accountable for a failure to object, if it is unaware that such a course is being undertaken. See Dunaway v. Windsor, 197 Ga. 705, 709 (30 SE2d 627) (1944) ("[a]cquiescence . . . implies a knowledge of those things which are acquiesced in"); Carter v. Wyatt, 113 Ga. App. 235, 240 (1) (148 SE2d 74) (1966) ("'(o)ne cannot acquiesce in something of which he has no knowledge'"). Accordingly, in the absence of any express or otherwise unambiguous notice[3] that the trial court intended to consider — or

_____

[3]Such "otherwise unambiguous notice" might be found, for example, where the trial court notifies the parties at the outset of the interlocutory hearing of its intent to resolve the merits of an issue of law. See Regency Club, 253 Ga. at 586 (affirming trial court's resolution, after interlocutory hearing, of constitutionality of ordinance, where trial court "stated several times" at the hearing that it intended to do so and parties were given full opportunity to present evidence at hearing and brief issues thereafter).

8

was purporting to grant — permanent injunctive relief at the May 13 hearing, McHugh Fuller's failure to object at that time did not constitute acquiescence. The trial court thus erred in granting permanent injunctive relief at this stage of the proceedings. See Wang, 292 Ga. at 573; Smith, 277 Ga. at 144-145; Mosley, 267 Ga. at 352.

*Case No. S15A0641*

2. We also find error in the trial court's conclusion that the appellate record in McHugh Fuller's initial appeal should not include any filings in the trial court submitted after the entry of the permanent injunction on June 2, 2014. Our Appellate Practice Act requires the appellant to specify in the notice of appeal "those portions of the record to be omitted from the record on appeal." OCGA § 5-6-37. Thus, it is the appellant that is charged with the duty to designate the appellate record. See Christopher J. McFadden et al., Ga. Appellate Practice, § 18:2 (updated Nov. 2014). Once such designation has been made, the appellee is permitted to designate for inclusion any materials the appellant has requested be omitted. OCGA § 5-6-43 (a). Where there is a dispute over the contents of the appellate record, the trial court is required to hold a hearing to resolve the dispute "so as to make the record conform to the

9

truth." OCGA § 5-6-41 (f).

From these provisions, we discern no support for the notion of omitting from the appellate record any portion of the trial court clerk's record, designated for inclusion by either the appellant or the appellee, that was filed in the trial court as of the time the notice of appeal was filed. The statutory scheme presumes that a complete record will be transmitted to the appellate court unless the appellant specifically requests otherwise. While this scheme contemplates requests by the appellee to <u>include</u> portions of the record that the appellant has designated for exclusion, it does not authorize the appellee to request <u>exclusion</u> of items the appellant desires to include.

This conclusion comports with the trial court's duty to ensure that the record "conform[s] to the truth." The full "truth" of what transpired in the trial court necessarily will include all the filings therein prior to the appeal. The statute recognizes this fact by expressly authorizing the trial court to correct "omission[s] or misstatement[s]," while making no provision for the elimination of allegedly extraneous items. OCGA § 5-6-41 (f). Contrary to PruittHealth's contention, the fact that certain filings may not be relevant to the issues on appeal — for example, as here, filings with new evidence not before the trial

court when it made the ruling being appealed — does not mean that such filings do not constitute part of the trial record eligible for inclusion in the record on appeal.[4]   Indeed, under OCGA § 5-6-41 (h), even papers that have been disallowed by the trial court may be filed in the record with a notation of disallowance and "shall become part of the record for purposes of consideration on appeal"; the statute thus recognizes that even materials not considered by the trial court may properly comprise part of the appellate record.

For these reasons, we conclude that the trial court erred in ordering the trial court clerk to omit from the appellate record all submissions filed after June 2, 2014.

Judgment vacated and case remanded in Case No. S15A0362.  Judgment reversed in Case No. S15A0641. All the Justices concur.

Decided May 11, 2015.

Equity. Stephens Superior Court. Before Judge Caudell.

Carlock, Copeland & Stair, Shannon M. Sprinkle, Tyler J. Wetzel, for

---

[4]The determination of relevancy for appeal purposes is, in any event, better left to the appellate court.

11

appellant.

      <u>Arnall Golden Gregory, John R. Hood, Jason E. Bring, Glenn P. Hendrix,</u>

for appellee.